[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present case arises from a dispute over real property sold at a tax sale pursuant to General Statutes § 12-157. On November 3, 1995, the plaintiff, John Mulqueen Associates, filed its final seven count amended complaint against Robert T. Miller and Joseph A. Novella (the individual defendants); and the CT Page 6917 Town of Bethel and Sandra A. Petersen (the municipal defendants), a former tax collector for the town.
The first count alleges a violation of General Statutes §12-157. In particular, the first count alleges that the plaintiff has an estate or an interest in a parcel of real property (the property) located in the town of Bethel and that by virtue of a tax sale conducted on January 18, 1992, the individual defendants acquired title to the property by way of a tax deed dated January 21, 1992, and recorded on the Bethel land records on January 19, 1993. The first count further alleges that the tax sale was conducted in violation of General Statutes § 12-157 in that the tax collector failed to notify the plaintiff of the pending sale and failed to file a timely notice of sale on the Bethel land records. Count one also alleges that the tax collector failed to notify the plaintiff within one year of the tax sale of its statutory right to redeem. Count one further alleges that as a result of the alleged omissions, the plaintiff has been deprived of adequate notice of the sale and its right to redeem in violation of the Fifth and Fourteenth Amendments to the United States Constitution.
Count two incorporates the allegations of the first count and seeks a declaratory judgment. Count three states a cause of action for an accounting, and alleges that the municipal defendants have neither paid nor accounted to the plaintiff for the excess received at the tax sale of January 18, 1992. Count four seeks a declaratory judgment as to the excess moneys.
Count five is an action to quiet title on the property, and it alleges that the plaintiff has an estate or interest in the property by virtue of a quitclaim deed executed in its favor, but that the individual defendants are the owners of record by virtue of a tax sale pursuant to § 12-157. Count six and seven allege violations of Title 42 U.S.C. § 1983 against Peterson and Bethel, respectively.
On October 19, 1993, the municipal defendants had filed an answer to one of the plaintiff's amended complaints denying the material allegations contained therein.[1] The municipal defendants also asserted four special defenses: 1) the tax collector held a tax sale pursuant to § 12-157 where unencumbered title was transferred to the individual defendants and that pursuant to § 12-159, a tax deed is prima facie evidence of unencumbered title; 2) the plaintiff is precluded CT Page 6918 from challenging the validity of the tax deed pursuant to §12-157 because the plaintiff had actual knowledge of the tax sale prior to the date of the recording of the tax deed; 3) the claim is barred by laches; and 4) the plaintiff corporation has been dissolved by the state and is without standing to bring the suit. On December 13, 1993, the plaintiff filed a response denying the special defenses asserted by the municipal defendants.
On October 31, 1994, the individual defendants filed an amended answer, counterclaim and cross-claim to the plaintiff's amended complaint denying the material allegations contained therein and asserting eight special defenses: 1) the tax collector held a tax sale pursuant to § 12-157 where unencumbered title was transferred to the individual defendants and that pursuant to § 12-159, a tax deed is prima facie evidence of unencumbered title; 2) the plaintiff is precluded from challenging the validity of the tax deed pursuant to §12-157 because the plaintiff had actual knowledge of the tax sale prior to the date of the recording of the tax deed; 3) the tax collector conveyed unencumbered title to the individual defendants, that due to a mistake or negligence on the part of the tax collector the requirements of § 12-157 were not or may not have been followed, but that § 12-159 provides that defects in the formal procedure of § 12-127 do not void the sale or the tax deed; 4) the action is barred by laches; 5) the court is without subject matter jurisdiction; 6) the plaintiff corporation was dissolved by the state and has no standing; 7) the claims are barred by laches; and 8) the claims are barred by the doctrine of unclean hands.
The cross-claim filed on October 31, 1994, against the municipal defendants, was stated in two counts. Count one alleges in pertinent part that the tax collector owed the individual defendants a duty and that she was negligent in that she: a) failed to comply with the requirements of § 12-157;b) failed to file a timely notice of sale on the Bethel town records; c) failed to mail the required notice of sale to the plaintiff as required by statute; and d) failed to deliver good marketable and unencumbered title to the individual defendants. Count one further alleges that the individual defendants were made to suffer damages caused by the tax collector's alleged negligence. Count two incorporates the first count and alleges that the tax deed expressly warranted that it conveyed good and marketable title to the property, that the town of Bethel breached the warranty of title and that the individual defendants have CT Page 6919 suffered damages.
The counterclaim filed on October 31, 1994, by the individual defendants alleges that they are the record owners of the property due to the tax sale, but that if title is defective, it is due to the negligence of the municipal defendants which they had no reason to anticipate.
On October 19, 1993, the municipal defendants filed an answer to the individual defendants cross-claims denying the material allegations contained therein. On February 7, 1994, the plaintiff filed a reply to the individual defendants' special defenses denying the material allegations of each one and asserting a special defense to the counterclaim that the individual defendants are not entitled to attorney's fees or punitive damages. On February 14, 1994, the individual defendants filed an answer to the plaintiff's counterclaim denying the material allegations contained therein.
On January 26, 1994, the plaintiffs filed a motion requesting the court to strike the plaintiff's claims from the jury list and to try the plaintiff's equitable causes of action before the defendants' legal causes of action on the ground that the plaintiff's equitable claims were not entitled to a jury. The court, Moraghan, J., granted the motion on February 14, 1994, but then vacated the order as an examination of the record indicated that the case was not on the trial list. On March 28, 1994, the plaintiff filed a motion for an order requesting the court to reinstate the February 14, 1994 order because the parties had filed their trial slips. This motion was granted by the court, Stodolink, J., on March 11, 1994. The plaintiff's claims were tried before the court, Mihalakos, J., on January 4, 1996. The court issued a decision in which the court denied "[t]he relief requested by the plaintiff," and entered judgment "for the defendant." John Mulqueen of Associates Inc. v. Miller, Superior Court, judicial district of Danbury, Docket No. 313890 (April 18, 1996, Mihalakos, J.).
On November 8, 1996, the municipal defendants filed a motion for summary judgment as to the individual defendants' cross-claim, accompanied by a memorandum of law and the decision in John Mulqueen Associates. Inc. v. Miller, supra, Superior Court, Docket No. 313890. On February 20, 1997, the individual defendants filed an objection to the municipal defendants' motion for summary judgment and a cross-motion for summary judgment on CT Page 6920 the cross-claims, as to liability only, accompanied by a memorandum of law and the affidavit of Robert Miller, the named individual defendant.[2]
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.)Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995). "As the party moving for summary judgment, the plaintiff is required to support its motion with supporting documentation, including affidavits." Heyman Associates No. 1 v.Insurance Co. of Pennsylvania, 231 Conn. 756, 796, 653 A.2d 122
(1995). "[T]he party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 808, 679 A.2d 945 (1996).
The municipal defendants move for summary judgment on the ground that there are no genuine issues of material fact and they are entitled to judgment as a matter of law. The municipal defendants argue that the individual defendants' cross-claims, sounding in negligence and breach of warranty, are barred by the doctrines of res judicata and collateral estoppel. The municipal defendants contend that the issues concerning the alleged negligence of the tax collector and the breach of warranty were fully and fairly litigated in the first phase of the bifurcated trial and that those issues were necessary to the court's findings of fact and conclusions of law.
In response, the individual defendants argue that the municipal defendants are not entitled to summary judgment on the basis of res judicata and collateral estoppel because the court's decision was devoid of any language referring to the individual defendants' cross-claims and the issues regarding the plaintiff's claims and the individual defendants' cross-claims are not CT Page 6921 similar. The individual defendants also observe that the counterclaim and the cross-claims were severed by the court and scheduled to be tried at a later time. The individual defendants further contend that there exist genuine issues of material fact with regard to their claims.
"[T]he terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively. Both claim preclusion and issue preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . ." (Citations omitted; internal quotation marks omitted.) Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 712-13,627 A.2d 374 (1993).
"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is `actuallylitigated' if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Jacksonv. R. G. Whipple. Inc., supra, 225 Conn. 714-15. "[T]he prior litigation must have resolved the same legal or factual issue that is present in the second litigation." Upjohn Co. v. Planning Zoning Commission, 224 Conn. 82, 94, 616 A.2d 786 (1992).
The municipal defendants argue that the individual CT Page 6922 defendants' negligence cross-claim is barred because the issue of the tax collector's negligence was addressed by the court in the plaintiff's case. The municipal defendants contend that the court found that the tax collector did not commit any negligent acts. In support, they cite to the portion of the court's decision which states: "[a]ll other efforts to comply with the requirements of Connecticut General Statutes § 12-157 were done by the tax collector." John Mulqueen Associates, Inc. v.Miller, supra, Superior Court, Docket No. 313890. The municipal defendants argue that the court found, as a matter of law, that the tax collector "fulfilled her duty by mailing notice of tax sale to both of the plaintiff's office addresses." (Memorandum of municipal defendants, p. 5., citing to Exhibit A, ¶ 7.)
Conversely, the individual defendants argue that the court specifically found that the tax collector "breached her duty by [failing] to comply with the prescribed method of conducting the tax sale." (Memorandum of individual defendants, p. 5.) In support, they cite to the court's decision which stated: "[t]he recordation on the land records was not in strict compliance with Connecticut General Statutes § 12-157 . . . ." John Mulqueen Associates. Inc. v. Miller, supra, Superior Court, Docket No. 313890. The individual defendants also argue that their claim of negligence is entirely different from the plaintiff's cause of action which sought equitable relief for failure to comply with General Statutes § 12-157.
The first consideration is whether the issue of the tax collector's alleged negligence was fully and fairly litigated in the first trial of the bifurcated proceeding.
"The courts of this state follow the Restatement (Second), Judgments, in applying the doctrine of res judicata. . . . The Restatement (Second), Judgments § 26 provides in part: `[w]hen any of the following circumstances exists, the [doctrine of res judicata] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action . . . (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action. . . .'" A.J. Masi Electric Co. v. Marron Sipe Building Contracting Corporation, 21 Conn. App. 565, 567-68,574 A.2d 1323 (1990). In the present case, the plaintiff asked the court to sever the individual defendants' causes of action from the CT Page 6923 plaintiff's and to try the plaintiff's claims before the individual defendants' claims. None of the parties objected and the court ordered all the defendants' claims severed from the plaintiff's. Consequently, the individual defendants were not permitted to litigate the issue of the tax collector's alleged negligence in the first proceeding, and that this claim was not submitted to the court for determination. Accordingly, the issue of the tax collector's negligence was not fully and fairly litigated in the first trial. See A.J. Masi Electric Co. v.Marron Sipe Building Contracting Corporation, supra,21 Conn. App. 565 (1990) (the doctrine of res judicata does not prevent a plaintiff from bringing a second suit on a claim where the trial court, with the consent of the parties, orders the claims severed and tried separately).
The next consideration is whether the issue of negligence was necessarily determined in the previous trial. In the first phase of the trial, the court, Mihalakos, J., found, in relevant part, that: "[t]he recordation on the land records was not in strict compliance with Connecticut General Statutes § 12-157, which requires recordation not more than ten weeks nor less than nine weeks of the sale date. All other efforts to comply with the requirements of Connecticut General Statutes § 12-157 were done by the tax collector. Failure to record on time does not, however, invalidate the transaction unless the plaintiff proves that notice of sale was not mailed to him and that he did not have actual knowledge of the sale. Clearly, the court believes that notice was sent to him and that he had actual knowledge. Connecticut General Statutes § 12-158,[3] which is a savings clause, clearly corrected the technical error in recordation of the deed." John Mulqueen Associates. Inc. v.Miller, supra, Superior Court, Docket No. 313890.
The issue of negligence was not necessary to the court's finding that the plaintiff had actual notice of the tax sale, which was the principal issue necessary to the resolution of the plaintiff's case. Moreover, the court's decision does not indicate that the issue of the tax collector's duty or negligence was actually decided. A finding that the General Statutes contains a provision that cured the defects in providing the plaintiff with notice does not logically lead to the conclusion that the tax collector was not negligent. Accordingly, the individual defendants' cross-claim sounding in negligence is not barred by the doctrine of collateral estoppel.[4]
CT Page 6924
The municipal defendants further contend that the individual defendants' cross-claim sounding in breach of warranty is barred by the doctrine of res judicata. The municipal defendants contend that the court found that "all procedures required by §12-157 had been adhered to and, therefore, that title was properly transferred to [the individual defendants]." (Memorandum of municipal defendants, p. 8.) In response, the individual defendants argue that res judicata does not apply because the court did not consider the breach of warranty issue during the plaintiff's case.
"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) Delahunty v. MassachusettsMutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996).
"[A] decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. We have stated that res judicata should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citations omitted; internal quotation marks omitted.) Delahunty v. Massachusetts Mutual LifeIns. Co., supra, 236 Conn. 591.
Applying these guiding principles, the individual defendants' breach of warranty claim is not barred by the doctrine of res CT Page 6925 judicata. In the present case, the individual defendants' claims were severed by the court. Thus, the issue of breach of warranty, as well as the issue of negligence, were not admissible matters which might have been offered to the court. Furthermore, the policy considerations advanced to justify the application of the doctrine are not compelling in the present case because the individual defendants' have not had an opportunity to litigate their claims. Furthermore, the application of the doctrine would frustrate the constitutional guarantee of the right to a jury trial. See Printers II v. Professionals Pub, Inc., 784 F.2d 141
(2d Cir. 1986) (the trial of nonjury issues may not be used to collaterally estop a party on fact issues to which was entitled to a jury). In the present case, the individual defendants' cross-claim was claimed to a jury, and the individual defendants' case was severed because the plaintiff was not entitled to a jury on its equitable claim. There are significant differences between an equitable action to reconvey and quiet title, and an action for breach of warranty. The equitable action to reconvey examined the actions of the tax collector in light of the statutory requirements of § 12-157. The breach of warranty claim will probe, inter alia, whether the deed was marketable and free of all encumbrances. "[F]or a deed to be free of all encumbrances there must be marketable title that can be sold at a fair price to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money. . . . To render a title unmarketable, the defect must present a real and substantial probability of litigation or loss at the time of the conveyance." (Citations omitted; internal quotation marks omitted.) Frimberger v. Anzellotti, 25 Conn. App. 401, 408,594 A.2d 1029 (1991). The maintenance of a separate action on the deed will not submit the court to the type of piecemeal litigation that the doctrine was intended to prevent. Indeed, the court, itself, in granting the motion to strike the plaintiff's claims from the jury list and to try the plaintiff's equitable claims prior to the individual defendants' legal claims, created the bifurcated proceeding.
The municipal defendants also argue that the individual defendants are barred from asserting a breach of warranty claim because the individual defendants have alleged, in their third special defense and in their counterclaim, that they hold "valid unencumbered title" to the property. The municipal defendants argue that these allegations are the equivalent of a judicial admission, preventing the individual defendants from bringing a breach of warranty claim. In response, the individual defendants CT Page 6926 argue that these allegations are not a judicial admission that they held title free of encumbrance.
"[A] judicial admission is an express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it." (Internal quotation marks omitted.) State v.Rodriquez, 180 Conn. 382, 396, 429 A.2d 919 (1980). "A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified." Hirsch v. Thrall, 148 Conn. 202, 206-07,169 A.2d 271 (1961). "Given the draconian consequences of judicial admissions it would seem the pleadings have to be read in their entirety, to determine if in fact there was an admission." Hydro Conduit Corp. v. John T. Callahan Sons, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 524204 (September 20, 1994, Corradino, J.).
The individual defendants' third special defense alleges in pertinent part that: "the town of Bethel executed a Tax Deed conveying valid, unencumbered title . . . to [the individual] defendants . . . ." The individual defendant's counterclaim alleges in pertinent part that: "The [individual] defendants . . . hold unencumbered title." These two allegations, when read in conjunction with the pleading as a whole, are not factual allegations but are assertions as to the legal effect that a tax deed has when properly executed. "Factual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . Admissions of a conclusory nature are not necessarily determinative, however, as a court may be justified in deviating from any such admission . . . The fact that some conclusory judicial admissions may not be binding has no impact on the admissibility of evidential admissions of a conclusory nature." (Citations omitted; emphasis in original.)Dreier v. Upjohn Co., 196 Conn. 242, 248, 492 A.2d 164 (1985). The court shall treat these allegations as conclusory and not treat these allegations as factual admissions conclusively determining the quality of the title transferred to the individual defendants. Such a treatment will allow the individual defendants' case to go forward while allowing the municipal defendants to use these allegations as other evidence of CT Page 6927 unencumbered title at the time of trial.
For the foregoing reasons, the court denies the municipal defendants' motion for summary judgment.
Stodolink, J.